Brigandi v Piechowicz (2004 NY Slip Op 50051(U))

[*1]

Brigandi v Piechowicz

2004 NY Slip Op 50051(U)

Decided on January 8, 2004

Supreme Court, Onondaga County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 8, 2004

Supreme Court, Onondaga County
 ANTHONY J. BRIGANDI and PAMELA BRIGANDI, Plaintiffs, vs.
against
DAVID M. PIECHOWICZ and KATHLEEN T. PIECHOWICZ, Defendants.
Index No. 02-5006
Appearances:

For the Plaintiff: Alexander & Catalano, LLC
By: William J. Hathaway, Esq. Of Counsel
For the Defendants: Sugarman Law Firm, LLP
By: Sandra L. Holihan, Esq. Of Counsel

EDWARD D. CARNI, J.
DECISION
Introduction
Defendants, David Piechowicz and Kathleen Piechowicz, (hereinafter "defendants") bring this motion for summary judgment seeking an order pursuant to CPLR § 3212 dismissing plaintiffs' complaint as a matter of law. Plaintiffs, Anthony Brigandi and Pamela Brigandi (hereinafter "plaintiffs") oppose defendants' motion and advance the argument that there are material issues of fact which preclude the granting of summary judgment at this time.

Factual Background
Plaintiffs' complaint and Verified Bill of Particulars allege that plaintiff Anthony Brigandi was injured on November 30, 2001 when he fell on the exterior stairs at the rear entrance of defendants' residence. On the date in question, plaintiff Anthony Brigandi had gone to defendants' home to install carpet recently purchased by defendants from Onondaga Carpets. Mr. Brigandi had a contractual arrangement with Onondaga Carpet to provide carpet installation services to Onondaga Carpet customers.
When Mr. Brigandi arrived at the defendants' residence, it appeared to him that no one [*2]was at home. He rang the front doorbell and knocked on the door. When no one answered the front door, Mr. Brigandi walked around to the rear of the home and ascended a set of stairs that lead to the rear sliding glass door entrance to the home. Color photographs depicting the rear entrance and the condition of the stairs are annexed to defendants' moving papers as Exhibit "F". The stairs contain four (4) wooden risers and terminate in a small landing in front of the sliding glass door. The width of the stairway however, is limited to approximately one-half of that of the sliding glass door (the left half as one enters from the outside). The stairs have a handrail on the left side as one ascends the stairs. However, this wooden handrail appears in the photographs to be partially obscured by the growth of adjacent foliage. There is no factual dispute that the right hand side of the stairs, as one ascends, did not have a handrail of any kind at the time of Mr. Brigandi's fall.
Plaintiffs' complaint alleges that defendants "owed plaintiffs a duty to maintain the aforementioned premises in a reasonable [sic] safe condition" and that "Anthony J. Brigandi was injured when he fell as a result of dangerous and defective condition(s) of the premises and the Defendants' failure to warn the Plaintiff of the aforementioned dangerous and defective condition (s)." The alleged "dangerous and defective condition " is not identified in plaintiffs' complaint.
Plaintiff's Verified Bill of Particulars alleges that the "Defendants were negligent, reckless and careless in the following ways:
a). In failing to maintain the stairs in a proper manner;
b). In failing to have a proper railing for the stairs;
c). In failing to keep the stairs in a proper condition;
d). In allowing moss to grow on the steps causing a dangerous and slippery condition to exist;
e). In allowing its stairs to become and remain in a negligent and hazardous condition which constituted a trap for persons such as the Plaintiff;
f). In failing to warn the plaintiff and others similarly situated as to the hazards involved;
g). In creating a nuisance and dangerous situation to persons lawfully present on said stairs."
In a letter supplement to plaintiffs' Bill of Particulars, plaintiffs' counsel alleged violations of "sections 713.1 (f) (1), (3) and (4) of the New York State Building Code Applicable to One and Two family Dwellings." In summary, these provisions of the Building Code require that stairs of the type at issue herein are to be equipped with a handrail or railing on both sides of the stairway.
[*3]
In opposition to defendants' motion, plaintiffs have submitted an affidavit from a licensed architect, Irving Paris, which provides an opinion that:
"... the stairs at issue were not in compliance with the applicable provisions of the New York State Building Code because there was no handrail or railing present on the left hand side of the stairs in the descending direction as required."
Defendants do not dispute that these sections of the Building Code are applicable to defendants' stairs and that the stairs were not in compliance with the Code at the time of Mr. Brigandi's fall.
Defendants do not dispute that Mr. Brigandi was involved in a fall at defendants' premises on the date and time alleged. There is also no dispute that as a result of the aforementioned fall, Mr. Brigandi sustained a fractured left wrist.
Defendants' Legal Arguments
Defendants move for summary judgment seeking dismissal of plaintiffs' 
complaint on the grounds that "plaintiffs cannot, as a matter of law, establish a defective or dangerous condition on the premises, or any negligence on the part of the defendants which was the proximate cause of plaintiff Anthony Brigandi's injury."
Defendants argue that there is no evidence that they "failed to maintain the stairs in a safe condition" (Emphasis supplied).The court agrees with this proposition. Plaintiffs have failed to present any proof that defendants were negligent in their maintenance of the stairs. Indeed, Mr. Brigandi testified that he did not know what caused him to slip upon the stairs and there was no moisture on the stairs at the time of his fall.
Defendants argue that they did not have actual or constructive notice of the alleged dangerous or defective condition. Defendants' undisputed testimony was that their four-member family had used the stairs frequently and no one had ever slipped or fallen before this incident.
Plaintiffs have failed to submit any proof of actual notice of a dangerous or defective condition and have failed to meet their burden on this element of the liability analysis.
In opposition, plaintiffs argue that the stairway in question was without the required handrail for the entire three years that defendants owned and resided at the premises prior to Mr. Brigandi's fall. Therefore, according to plaintiffs, defendants must be charged with constructive notice of the dangerous or defective condition caused by the failure to comply with the Building Code.
Defendants argue that they can not be charged with creating the alleged dangerous or defective condition because the stairway was built and installed by an independent contractor prior to defendants' purchase of the premises.
Lastly, defendants argue that plaintiffs cannot establish, as a matter of law, that the alleged Building Code violation was a substantial factor in causing plaintiff's fall and injuries. 
Legal Analysis 

It is well settled that the owner or possessor of land or a building has a duty to use reasonable care to keep the premises in a reasonably safe condition for the protection of all persons whose presence is reasonably foreseeable (see, NYPJI 2:90, Possessor's Liability for Condition or Use of Premises-Standard of Care). In analyzing this duty, it is said that "a landowner owes a duty to exercise reasonable care in maintaining his property in a safe condition under all the circumstances, including the likelihood of injury to others, the seriousness of the potential injuries, the burden of avoiding the risk, and the foreseeability of a potential plaintiff's presence on the property" (Kurshals v Connectquot Cent. School Dist., 227 AD2d 593 [2d Dept 1996]).
A building owner is not liable for personal injuries caused by a defective condition on the premises unless the owner created the condition or had actual notice or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, the owner should have corrected it (see, Richardson v Simone, 275 AD2d 576 [3d Dept 2000]). As a general rule, a party who engages an independent contractor is not liable for the independent contractor's negligence because that party had no right to supervise or control the work being performed (see, Richardson, 275 AD2d at 576 citing Kleeman v Rheingold, 81 NY2d 270, 273 [1993]). In Richardson, a personal injury action brought against a homeowner was dismissed as a matter of law where the landing and stairway at issue was designed and installed by an independent contractor and defendants homeowners lacked actual or constructive notice of the defect (see, Richardson, 275 AD2d at 576 ["There is no basis to impose vicarious liability on defendants for any negligence of the independent contractor in creating the defective condition in the landing and staircase"]).
Evidence of a Building Code violation serves as some evidence of negligence on the part of defendants (see, NYPJI 2:29, Statutory Standard of Care-Ordinance or Regulations); Hill v Cartier, 258 AD2d 699, 701 [3d Dept 1999]). The issue of whether or not defendants had notice that this alleged defective condition, namely the absence of a railing or handrail, was a violation of the State Building Code is irrelevant because "ignorance of the law does not excuse persons so as to exempt them from the consequences of their acts" (Hill, 258 AD2d at 700 citing National Conversion Corp. v Cedar Bldg. Corp., 23 NY2d 621 [1969] quoting Municipal Metallic Bed Mfg. Corp., 253 NY 313, 317 [1930]).
However, it is absolutely necessary that plaintiff establish that any violation of the Building Code was a "substantial factor in bringing about the occurrence" (see, NYPJI 2:29, Statutory Standard of Care-Ordinances or Regulations). [FN1]
Here, there is undisputed evidence of a violation of the Building Code in the form of plaintiffs' expert affidavit. However, plaintiffs' submissions and proof completely fail to address the issue of whether the Building Code violation was a "substantial factor" in bringing about the occurrence.
For example, the affidavit of plaintiffs' expert completely fails to address the issue of causation and the court is without guidance from this witness as to whether the absence of a handrail caused or contributed to plaintiffs' loss of balance and subsequent fall or whether the presence of a handrail would have intercepted or mitigated plaintiffs' fall. Compare the proof in this case to that in Thomassen v J & K Diner, 152 AD2d 421 [2d Dept 1989] where the court stated:
"Another expert witness testified that the pitch variation and resultant variations in the step height in the top three steps of this staircase were considerably in excess of the specifications in the New York State Building Code 99 NYCRR 735.3 [a] [8]. It was this expert's opinion that those variations caused the plaintiff to lose her balance and that her loss of balance could have been corrected by a properly placed handrail." (Thomassen, 152 AD2d at 423).
Here, plaintiffs' expert witness is silent on the issue of causation. There is no discussion of the issue of whether a handrail installed in compliance with the Building Code could have prevented or mitigated Mr. Brigandi's fall, given his height, weight and the circumstances of his fall. The record doesn't contain any information whatsoever about plaintiff's height and weight. Thus there is no foundational data for an expert to offer an opinion as to the dynamics of plaintiff's fall or how his center of gravity would potentially interact with a code compliant handrail. Plaintiffs' expert doesn't offer any opinion as to the purpose for the railing requirement [*4]in the Building Code. [FN2] Is it to allow users to correct a loss of balance? If so, how does that function relate to the facts and circumstances of this incident?
Here, plaintiff offered no proof of any attempt to correct his loss of balance by reaching for a handrail. There is no proof that a code compliant handrail on the left descending side of the stairs would have been within plaintiff's reach from the point of his initial loss of balance. Plaintiff failed to establish in this record where he was located along the width of the stairway. Plaintiff's deposition testimony established that his right heel was on the step just below the porch, but plaintiff failed to establish how far he was from the right descending handrail or from the required location of a code compliant left descending handrail (see, Brigandi Tr at pgs 18-19).
Although the provisions of the Building Code relied upon by plaintiff do require that handrails be installed at "not less than 30 inches nor more than 36 inches in height" and at minimum points along the linear width of the stair treads, plaintiff's expert did not provide the court with any measurement of the width or span of the stair treads and no analysis of how the absence of a handrail was a proximate cause of plaintiff's fall.
 Alternatively, if the purpose of the handrail is to serve as a guardrail to channel users to the stairs and prevent a fall over the side of the stairs, how does that function relate to this incident and would a code compliant handrail have accomplished that purpose in this case? Plaintiffs' submissions fail to address all of these issues.
Plaintiff Anthony Brigandi's deposition testimony is equally unavailing. Initially, Mr. Brigandi is not capable of stating what caused him to fall in the first place. He doesn't say that the absence of a handrail caused him to lose his balance. He simply says that his "feet went out from underneath" him (Brigandi Tr at 18). He doesn't say that, once his fall was in motion from some known or unknown cause, he reached for a handrail that wasn't there. Plaintiff's deposition testimony doesn't provide a sufficient factual basis for an expert to offer an opinion that the presence of a handrail would have blocked or prevented his fall. [FN3]
Plaintiffs' counsel argues in an affirmation in opposition that "It is at least a question of fact as to whether the plaintiff would have fallen at all if the railing would have been there as required by the building code. A trier of fact could easily find that the absence of the railing (and the violation of the building code) was a proximate cause of the accident and injury." Of course, it is well settled that an attorney's affirmation, not based upon personal knowledge, is insufficient to defeat a motion for summary judgment.
[*5]
While this argument would have some merit if supported by a minimal factual basis in the record before the court, there simply is no evidence in this record to support a finding that violation of the Building Code was a substantial factor in bringing about plaintiff Anthony Brigandi's fall and injuries.
Conclusion
This court is mindful of the general rule that the issue of proximate cause is ordinarily one for the trier of fact. However, in order to reach the jury on the proximate cause issue, the plaintiffs must at least scratch the surface and place before the court proof in admissible form so as to create a question of fact. It is this court's view, that given the complete absence of proof on the issue of proximate cause, Plaintiffs have failed to meet their burden and create a triable question of fact to defeat summary judgment. There simply is no proof in this record that the absence of a handrail in violation of the Building Code was a substantial factor in causing plaintiff's fall and injuries.
Accordingly, defendants' motion for summary judgment is granted and plaintiffs' complaint is dismissed in its entirety.
Defendants' counsel to submit proposed order on notice. This constitutes the decision of the court.
Enter
EDWARD D. CARNI, J.S.C.
Decision Date: January 08, 2004
Footnotes

Footnote 1: Hill v Cartier, 258 AD2d 699 [3d Dept 1999] seems, at first glance, to suggest that all a plaintiff needs to establish in a code violation/personal injury action is the violation of the State Building Code and notice of the dangerous condition (Hill, 258 AD2d at 700). However, a closer reading of the Hill case confirms that proof that the Building Code violation was a "substantial factor in bringing about the occurrence" is a predicate to a finding of liability (id. at 701). In Hill, the code violation was an unguarded window next to a stairway. In analyzing the proximate cause issue, the Hill court stated: "Also, the jury could fairly conclude that the absence of any such protection or guard was a proximate cause of plaintiff's injuries in that such injuries were sustained as a result of plaintiff's arm going through the window and that defendant had notice of the conditions of the stairs and the area surrounding the stairs" (id. at 701). 

Footnote 2: The Building Code does not require a handrail to demonstrate any particular load bearing capacity or require the handrail to withstand the application of any designated minimum levels of lateral, vertical or horizontal loads or forces. There is no requirement that the handrail be constructed of any particular type of material or designed in any specific manner.

Footnote 3: When asked what caused him to fall, Mr. Brigandi testified: "A. What caused me to fall? Probably to the without a railing there maybe. I mean, I slipped, I fell." (Brigandi Tr at 34).